**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**EASTERN DIVISION**

| | |
|---|---|
| **DANIEL BEIRNE, on behalf of himself and all others similarly situated,** | **Case No.: EDCV 19-00170-CJC(KKx)** |
| **Plaintiff,** | **ORDER GRANTING IN SUBSTANTIAL PART UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT [Dkt. 23]** |
| **v.** | |
| **TREPCO IMPORTS & DISTRIBUTION, LTD.; and DOES 1 through 250, inclusive,** | |
| **Defendants.** | |

## I. INTRODUCTION & BACKGROUND

Plaintiff Daniel Beirne brings this putative class action against Defendant Trepco Imports & Distribution, Ltd., a trucking and delivery service company, on behalf of himself and all current and former hourly non-exempt Trepco employees. (Dkt. 15 [First Amended Complaint, hereinafter "FAC."].) Plaintiff, a delivery driver, asserts that

Defendant violated various provisions of the California Labor Code by requiring him and class members to keep track of their hours—but not their meal and rest breaks—on paper, and never telling them that they were required to take meal and rest breaks while working.  (*Id.* ¶¶ 16–17.)  Plaintiff therefore never took breaks, and ate while driving, especially since his supervisors pressured him to make deliveries as quickly as possible.  (*Id.* ¶¶ 17, 20.)  Defendant has since updated its system to allow drivers to clock in and out for meal and rest breaks.  (*Id.* ¶ 25.)  Plaintiff asserts claims for (1) unpaid meal period premiums, (2) unpaid rest period premiums, (3) record-keeping, (4) failure to provide accurate wage statements, (5) failure to timely pay all wages, (6) failure to pay overtime and calculate it correctly, (7) unfair business practices, and (8) penalties under the California Private Attorneys General Act ("PAGA").

On December 16, 2019, the parties attended a full-day mediation before an experienced and well-regarded wage and hour class action mediator, Steve Serratore.  (Dkt. 23 [Motion, hereinafter "Mot."] at 6, 15; Dkt. 23-1 [Joint Stipulation and Class Action Settlement Agreement, hereinafter "Agr."] ¶ 39.)  The parties accepted the mediator's proposal and settled the case.  (Mot. at 15.)  The Settlement Agreement creates a common settlement fund of $310,000, with $110,000 of that amount going to the attorneys, $7,000 to the claims administrator, $7,500 to the California Labor & Workforce Development Agency, $5,000 to the class representative, and $180,500 to the class.  (Agr.; Mot. at 15–16.)  Before the Court is Plaintiff's unopposed motion for preliminary approval of the Settlement Agreement.  (Mot.; *see* Agr. ¶ 47 [noting that Defendant agreed not to oppose Plaintiff's motion for class certification].)  For the following reasons, the motion is **GRANTED IN SUBSTANTIAL PART**.[1]

---

[1]  Having read and considered the papers presented by the parties, the Court finds this matter appropriate for disposition without a hearing.  *See* Fed. R. Civ. P. 78; Local Rule 7-15.  Accordingly, the hearing set for August 3, 2020, at 1:30 p.m. is hereby vacated and off calendar.

## II.  ANALYSIS

To determine whether preliminary approval of the Settlement Agreement is appropriate, the Court reviews (1) the requirements for class certification, (2) the fairness of the proposed settlement, (3) the attorney fees and incentive awards requested, (4) the request for appointment of a settlement administrator, and (5) issues relating to notice of the proposed settlement.

### A.      Class Certification Requirements

Where, as here, a plaintiff seeks conditional class certification for purposes of settlement, the Court must ensure that the four requirements of Federal Rule of Civil Procedure 23(a) and at least one of the requirements of Rule 23(b) are met.  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997); *Staton v. Boeing Co.*, 327 F.3d 938, 952–53 (9th Cir. 2003).  Here, the proposed settlement class includes "all current and/or former non-exempt employees that worked for Trepco in hourly positions between November 13, 2015, and through the date of preliminary approval."  (Agr. ¶ 4.)  For the following reasons, the Court **GRANTS** provisional certification of this class for settlement purposes.

### 1.      Rule 23(a) Requirements

Under Rule 23(a), the plaintiff must show the class is sufficiently numerous, that there are questions of law or fact common to the class, that the claims or defenses of the representative parties are typical of those of the class, and that the representative parties will fairly and adequately protect the class's interests.

### a.    Numerosity

Rule 23(a)(1) requires that "the class is so numerous that joinder of all members is impracticable."  There is no magic number required to satisfy numerosity; instead, courts consider the facts of each specific case.  *See In re Cooper Cos. Inc. Sec. Litig.*, 254 F.R.D. 628, 634 (C.D. Cal. 2009) (citing *Gen. Tel. Co. of Nw., Inc. v. E.E.O.C.*, 446 U.S. 318, 330 (1980)).  "As a general matter, courts have found that numerosity is satisfied when class size exceeds 40 members."  *Moore v. Ulta Salon, Cosmetics & Fragrance, Inc.*, 311 F.R.D. 590, 602–03 (C.D. Cal. 2015); *see Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466, 473–74 (C.D. Cal. 2012).  Here, numerosity is easily satisfied because Defendant's employment and payroll records show there are approximately 320 individuals in the proposed settlement class.  (Mot. at 17; Dkt. 23-4 [Declaration of Brent S. Buchsbaum, hereinafter "Buchsbaum Decl."] ¶ 40.)

### b.    Commonality

Rule 23(a)(2) requires that "there are questions of law or fact common to the class."  The plaintiff must "demonstrate that the class members 'have suffered the same injury,'" which "does not mean merely that they have all suffered a violation of the same provision of law."  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 (1982)).  Rather, the plaintiff's claim must depend on a "common contention" that is capable of classwide resolution.  *Id.*  This means "that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Id.*

Plaintiff claims that Defendant's policies of requiring its drivers to keep track of their own hours, and failing to inform them that they were required to take meal and rest breaks, violate California law.  (*See* FAC ¶¶ 17, 18.)  Plaintiff contends that Defendant

therefore failed to provide lawful paid rest breaks and failed to keep accurate records of Plaintiff's working hours.  (*See id.*)  He further alleges that, as a result of these unlawful policies, Defendant failed to timely pay all wages owed (including premiums for unlawfully withheld rest periods) and provide accurate wage statements.  (*See id.* ¶¶ 22–24, 26.)

Resolution of the class's claims presents common questions including (1) whether Defendant had and enforced a uniform policy of requiring drivers to record their own hours but not meal and rest breaks, and (2) whether that policy violated California law. (*See* Barnes Decl. ¶ 41.)  Those questions are central to each class member's claims and their resolution will help determine, "in one stroke," whether Defendant violated the law and if so, the amount of damages the class may obtain.  *See Dukes*, 564 U.S. at, 350.

### c.    Typicality

Rule 23(a)(3) requires that the "claims or defenses of the representative parties are typical of the claims or defenses of the class."  Representative claims are "typical" if they are "reasonably coextensive with those of the absent class members; they need not be substantially identical."  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). Here, as an hourly non-exempt employee, Plaintiff was subject to the same policy as the rest of the class.  (*See* Buchsbaum Decl. ¶ 42.)  His injury and his claims are the same as those of the class members.  (*See id.*)  Accordingly, Plaintiff's claims are "reasonably coextensive" with those of the class.  *See Hanlon*, 150 F.3d at 1020.

### d.    Adequacy

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class."  This factor requires (1) a lack of conflicts of interest

between the proposed class and the proposed representative plaintiff, and (2) representation by qualified and competent counsel that will prosecute the action vigorously on behalf of the class. *Staton*, 327 F.3d at 957. The concern in the context of a class action settlement is that there be no collusion between the defendant, class counsel, and class representatives to pursue their own interests at the expense of the interests of the class. *Id*. at 958 n.12.

There is no evidence of a conflict of interest between Plaintiff and the class. Plaintiff's claims are identical to those of the class, and he has every incentive to vigorously pursue those claims. Nor is there any evidence that Plaintiff's counsel will not adequately represent or protect the interests of the class. Plaintiff's counsel, Brent Buchsbaum of the Law Offices of Buchsbaum & Haag, has extensive experience litigating wage-and-hour class actions. (*See* Barnes Decl. ¶¶ 2–8, 43.) Counsel has vigorously prosecuted this matter, and his efforts led to the present Settlement Agreement. The record indicates that he has represented the class capably and adequately.

## 2.    Rule 23(b)(3) Requirements

In addition to the requirements of Rule 23(a), Plaintiff must satisfy the requirements of Rule 23(b) to show that the action falls within one of the three "types" of classes. Here, Plaintiff seeks certification under Rule 23(b)(3). Rule 23(b)(3) allows certification where (1) questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and (2) a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

//

### a.    Predominance

Although the predominance requirement overlaps with Rule 23(a)(2)'s commonality requirement, it is a more demanding inquiry.  *Hanlon*, 150 F.3d at 1019. The "main concern in the predominance inquiry . . . [is] the balance between individual and common issues."  *In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 571 F.3d 953, 959 (9th Cir. 2009).  The plaintiff must show that "questions common to the class predominate, not that those questions will be answered, on the merits, in favor of the class."  *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 459 (2013).

Plaintiff has shown that questions common to the class predominate over any questions affecting only individual members.  The central question in this case is whether Defendant had a policy of pressuring drivers not to take a meal or rest break, or of not informing them of their right to take one.  That question can be resolved using common evidence regarding Defendant's policy for all class members.  The collateral questions in this case are whether Defendant paid class members all wages owed and whether it gave them accurate wage statements.  These questions can also be resolved using common evidence—including Defendant's time records and pay stubs—for all class members. Indeed, Defendant's stipulation for class certification tends to indicate that it agrees that there are sufficient common questions to support creation of a settlement class.  (*See* Agr. ¶ 47.)

### b.    Superiority

Class actions certified under Rule 23(b)(3) must also be "superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  Courts consider four nonexclusive factors in evaluating whether a class action is the superior method for adjudicating a plaintiff's claims: (1) the interest of each

class member in individually controlling the prosecution or defense of separate actions, (2) the extent and nature of any litigation concerning the controversy already commenced by or against the class, (3) the desirability of concentrating the litigation of the claims in the particular forum, and (4) the difficulties likely to be encountered in the management of a class action. *Id.*

The Court finds that proceeding as a class is superior to other methods of resolving this case. A class action may be superior "[w]here classwide litigation of common issues will reduce litigation costs and promote greater efficiency." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996). A class action may also be superior when "no realistic alternative" to a class action exists. *Id.* at 1234–35. Here, given the common issues presented by all class members, adjudicating these claims on an individual basis for 320 employees would be not only inefficient, but also unrealistic. Additionally, although the Court foresees no management problems from litigating this dispute as a class action, the Supreme Court has held that a district court "need not inquire whether the case, if tried, would present intractable management problems" in a "settlement-only class certification." *Amchem*, 521 U.S. at 620. Accordingly, Plaintiff's proposed class is appropriate for provisional certification under Rules 23(a) and 23(b)(3).

## B. Fairness of the Proposed Settlement

Plaintiff seeks preliminary approval of the Settlement Agreement. Rule 23(e) "requires the district court to determine whether a proposed settlement is fundamentally fair, reasonable, and accurate." *Staton*, 327 F.3d at 959 (quoting *Hanlon*, 150 F.3d at 1026). To determine whether this standard is met, courts consider factors including "the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the

proceedings; the experience and views of counsel; . . . and the reaction of the class members to the proposed settlement." *Id.* (quoting *Molski v. Gleich*, 318 F.3d 937, 953 (9th Cir. 2003)).  At the preliminary approval stage, a full "fairness hearing" is not required.  *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007).  Rather, the inquiry is whether the settlement "appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *Id*.

As explained, the settlement has four main parts: money to the class, a PAGA payment, an incentive award to the representative plaintiff, and attorney fees.  For the following reasons, the Court preliminarily approves the first three categories, and also approves a substantial part of the attorney fees requested.

### 1.    Class Member Compensation, PAGA Payment, and Incentive Award

Having reviewed the arms-length negotiation process and substantive terms of the Settlement Agreement, the Court finds no obvious deficiencies or grounds to doubt its fairness as to the amount of class member compensation, PAGA payment, and incentive award.  *See id.*  The parties reached a settlement after conducting substantial discovery and a full-day mediation.  (Buchsbaum Decl. ¶ 32); *see In re Heritage Bond Litig.*, 2005 WL 1594403, at *9 (C.D. Cal. June 10, 2005) ("A presumption of correctness is said to attach to a class settlement reached in arm's-length negotiations between experienced capable counsel after meaningful discovery." (internal quotation and citations omitted)).  Each class member will receive a substantial recovery—payouts will depend on the number of weeks each class member worked, but the average payment to class members is estimated to be $564.06.  (*See* Mot. at 16; Buchsbaum Decl. ¶ 38.)  Additionally, there

is no evidence of collusion during the parties' settlement negotiations.  Indeed, "[t]he assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive."  *Satchell v. Fed. Express Corp.*, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007).

The Settlement Agreement also appears to present a fair compromise in light of the risks and expense of continued litigation.  Litigation had reached a stage where the parties had a clear view of the strengths and weaknesses of their positions.  Specifically, the parties had the benefit of significant discovery, including detailed class-wide time and pay record data and multiple versions of employee handbooks, and a full-day mediation. (Mot. at 11, 13–14.)  With that information, they were able to realistically value Defendant's liability and assess the risk of moving forward with class certification, motion practice, and trial.  (*See id.* at 11.)  The $300,000 settlement amount represents 42 percent of the Defendant's estimated exposure in this case.  (*See id.* at 13 ["[W]e viewed the gross exposure at approximately $715,000."].)  In light of the significant hurdles to recovery if litigation were to continue, the Court finds that the Settlement Agreement reflects a fair result.

The settlement also includes a PAGA payment of $10,000, with $7,500 (75% of the $10,000) being paid to the California Labor and Workforce Development Agency, and $2,500 (25% of the $10,0000) being paid to class members as part of the net settlement amount.  (Agr. ¶ 24.)  The Court preliminarily finds that the proposed payment appears adequate and fair given the difficulty Plaintiff would have had in recovering the full $214,640 in PAGA penalties sought here.  (*See* Buchsbaum Decl. ¶ 22.)

The settlement also involves a $5,000 incentive award to compensate the class representative for his time and efforts on behalf of the class.  Incentive awards are payments to class representatives for their service to the class in bringing the lawsuit.  *See*

*Radcliffe v. Experian Info. Sols. Inc.*, 715 F.3d 1157, 1163 (9th Cir. 2013).  Such awards "are fairly typical in class action cases" and are discretionary.  *Rodriguez v. W. Pub. Corp.*, 563 F.3d 948, 958 (9th Cir. 2009) (emphasis removed).  Although they "typically range from $2,000.00 to $10,000.00 . . . [h]igher awards are sometimes given in cases involving much larger settlement amounts."  *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 267 (N.D. Cal. 2015) (collecting cases); *see In re Toys R Us-Del., Inc.-Fair & Accurate Credit Transactions Act Litig.*, 295 F.R.D. 438, 470 (C.D. Cal. 2014) (explaining that California district courts typically approve incentive awards between $3,000 and $5,000).  In the Ninth Circuit, a $5,000 incentive award is "presumptively reasonable."  *See Bellinghausen*, 306 F.R.D. at 266.  Here, the Court sees no reason why Plaintiff should not receive the presumptively reasonable award of $5,000.

### 2.    Attorney Fees

The Settlement Agreement provides for $100,000 in attorneys' fees and up to $10,000 in costs, plus approximately $7,000 in claims administration costs.  This amount reflects a startling 39% of the $300,000 Defendant agreed to pay.

The Ninth Circuit has held that 25% of the settlement fund is the "benchmark" for a reasonable fee award, and courts must provide adequate explanation in the record of any "special circumstances" to justify a departure from this benchmark.  *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942–43 (9th Cir. 2011) (citing *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990)); *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989) ("We note with approval that one court has concluded that the 'bench mark' percentage for the fee award should be 25 percent.  That percentage amount can then be adjusted upward or downward to account for any unusual circumstances involved in this case." (internal citation omitted)).  The Court no reason to believe that there are any special or unusual circumstances that

apply in this case, and Plaintiff has cited none.  (*See* Mot. at 16–17 [noting the Ninth
Circuit's 25% benchmark, but not explaining why a higher percentage is appropriate in
this case].)  Indeed, this is not a complex case, and there was no motion practice or other
substantial litigation.  Accordingly, at this time the Court preliminarily approves only
$75,000 in attorney fees, or 25% of the settlement fund.  The Court will expect detailed
evidence and declarations supporting the requested fee award at the final approval stage.

## C.    Settlement Administrator

Plaintiff asks the Court to appoint Simpluris Inc. ("Simpluris") as settlement
administrator.  (Mot. at 19.)  Simpluris appears to have significant experience acting as a
settlement administrator, and federal courts in California routinely approve Simpluris as a
class action settlement administrator.  *See*, *e.g.*, *Metrow v. Liberty Mut. Managed Care
LLC*, 2018 WL 6265085, at *5 (C.D. Cal. June 14, 2018); *Carter v. San Pasqual
Fiduciary Tr. Co.*, 2018 WL 6174767, at *1 (C.D. Cal. Feb. 28, 2018).  Accordingly, the
Court appoints Simpluris as Settlement Administrator.  Detailed evidence supporting
administrator expenses will be required before final approval.

## D.    Notice of the Proposed Settlement

Finally, Plaintiff seeks approval of the proposed manner and form of the notice that
will be sent to the class members.  For Rule 23(b)(3) classes, courts "must direct to class
members the best notice that is practicable under the circumstances, including individual
notice to all members who can be identified through reasonable effort."  Fed. R. Civ.
P. 23(c)(2)(B).

The Court finds the proposed manner of notice is adequate.  Plaintiff proposes a
notice protocol centering on direct mail.  Following preliminary approval, Defendant will

provide Simpluris a list of class members.  (Agr. ¶ 64.j.)  Simpluris will run the names and addresses from this list through the National Change of Address database, and update its information accordingly.  (*Id.* ¶ 64.c.i.)  Simpluris will then mail a notice to each class member, and also perform skip traces on any notice package returned as undeliverable. (*Id.* ¶ 64.c.ii.–iii.)  The class notice will describe the lawsuit, describe the terms of the settlement, and explain how each class member's share will be calculated.  (*See* Dkt. 23-2 [Proposed Notice].)  It will also direct class members to a website with the Settlement Agreement and other key documents.  (*See id.* at 4 [with placeholder for exact website].)

The form of notice also meets the requirements of Rule 23(c)(2)(B).  Notice to class members must "clearly and concisely state, in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues or defenses; (iv) that the class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)."  Fed. R. Civ. P. 23(c)(2)(B).  Here, the proposed notice provides clear information about the definition of the class, the nature of the action, a summary of the terms of the proposed settlement, the process for objecting to the settlement, and the consequences of inaction. (*See* Dkt. 23-2.)  The notice also helps a class member receiving the notice calculate the payment he or she would receive under the settlement.  (*Id.* at 4–5.)  The notice will also provide specific details regarding the date, time, and place of the final approval hearing[2] and inform class members that they may enter an appearance.  (*See id.* at 7–8.)

//

//

---

[2] The Court notes that the draft notice currently states that the hearing will be held before Judge Christina Snyder.  The Court trusts this error will be corrected before class notice is sent.

**III.  CONCLUSION**

For the foregoing reasons, the Court **GRANTS** provisional certification of the class for settlement purposes and **GRANTS IN SUBSTANTIAL PART** preliminary approval of the Settlement Agreement.  The Court hereby **APPOINTS** Plaintiff Daniel Beirne as Class Representative, Brent S. Buchsbaum of the Law Offices of Buchsbaum & Haag, LLP as Class Counsel, and Simpluris Inc. as Settlement Administrator.  The Court also **APPROVES** the proposed notice and orders that it be disseminated to the class as provided in the Settlement Agreement.  The final approval hearing will be held on **Monday, November 16, 2020, at 1:30 p.m.**

DATED:     July 28, 2020

_____

CORMAC J. CARNEY

UNITED STATES DISTRICT JUDGE