1  **LAW OFFICES OF BUCHSBAUM & HAAG, LLP**
2  BRENT S. BUCHSBAUM, CSBN: 194816
   *brent@buchsbaumhaag.com*
3  LAUREL N. HAAG, CSBN: 211279
   *laurel@buchsbaumhaag.com*
4  100 Oceangate, Suite 1200
5  Long Beach, California 90802
6  Telephone: (562)733-2498; Fax: (562)628-5501

7  Attorneys for Plaintiff, DANIEL BEIRNE

8

9  UNITED STATES DISTRICT COURT

10  CENTRAL DISTRICT OF CALIFORNIA

11  DANIEL BEIRNE, individually, on      Case No.: 5:19-cv-00170-CAC-KKx
12  behalf of all others similarly situated,
    and as representatives of other      The Honorable Cormac J. Carney
13  aggrieved employees,                 **CLASS ACTION**
14                    Plaintiff;         **NOTICE OF MOTION AND MOTION
15                                        FOR FINAL APPROVAL OF CLASS
16           vs.                          ACTION SETTLEMENT, INCLUDING
                                          ATTORNEY'S FEES AND COSTS;
17  TREPCO IMPORTS &                      MEMORANDUM OF POINTS AND
18  DISTRIBUTION ltd.  company; and       AUTHORITIES**
    DOES 1 through 250, inclusive;
19                                        Date:   November 16, 2020
20                    Defendants.         Time:   1:30 p.m
                                          Ctrm:   9B
21
22                                        Action Filed:  11/13/18
23
24
25
26
27
28

BUCHSBAUM & HAAG, LLP
100 OCEANGATE, SUITE 1200
LONG BEACH, CALIFORNIA 90802

1 | **TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

2 |     **PLEASE TAKE NOTICE THAT ON** the date that on November 16,

3 | 2020, at 1:30p.m. in the United States District Court for the Central District of

4 | California, Courtroom 7C, before District Judge Cormac J. Carney, Plaintiff

5 | Daniel Beirne (Plaintiff) will move for final approval of the proposed Class

6 | Settlement with Defendant Trepco Imports & Distribution ltd. ("Defendant").

7 | This motion is unopposed as based on the Class Action Settlement Agreement

8 | ("Agreement") between the parties, which was filed in connection with the

9 | Motion for Preliminary Approval.

10 |     The motion will be based on this Notice of Motion and the attached

11 | Memorandum of Points and Authorities filed herewith, the Declaration of Brent

12 | Buchsbaum, the Declaration of Daniel Beirne and attached exhibits, the

13 | argument of counsel and upon such other material contained in the file and

14 | pleadings of this action.

BUCHSBAUM & HAAG, LLP
100 OCEANGATE, SUITE 1200
LONG BEACH, CALIFORNIA 90802

Respectfully Submitted,

Dated: October 26, 2020     LAW OFFICES OF BUCHSBAUM & HAAG
    A Limited Liability Partnership

By:___/s/ Brent S. Buchsbaum_____
Brent Buchsbaum, Attorney for Plaintiffs

MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................... 5

II.   FACTS AND PROCEDURE ................................................................. 6

      A. Plaintiff Filed a Putative Class Action Alleging Labor Code

      Violations ............................................................................................. 6

III.  LEGAL CLAIMS .................................................................................. 7

      A.    Unpaid Overtime / Regular Rate Miscalculation ..................... 7

      B.    Meal and Rest Period Premiums ............................................... 9

      C.    Paystub Claims .......................................................................... 9

      D.    PAGA CLAIMS ...................................................................... 10

IV.   THE SETTLEMENT MERITS FINAL APPROVAL ......................... 10

      A.    The Settlement is Fair, Adequate and Reasonable ................. 10

      B.    The Final Approval Standard Is Met ....................................... 14

V.    THE SETTLEMENT MERITS CERTIFICATION .............................. 19

      A.    Rule 23(a)(1) Numerosity Is Satisfied .................................... 19

      B.    Rule 23(a)(2) Commonality Is Satisfied .................................. 19

      C.    Rule 23(a)(3) Typicality Is Satisfied ....................................... 19

      D.    Rule 23(a)(4) Adequacy Is Satisfied ....................................... 19

      E.    Rule 23(b)(3) Predominance Is Satisfied ................................. 19

VI.   THE NOTICE PROCESS SATISFIED DUE PROCESS        ......21

VII.  CONCLUSION .................................................................................... 23

BUCHSBAUM & HAAG, LLP
100 OCEANGATE, SUITE 1200
LONG BEACH, CALIFORNIA 90802

MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF FINAL APPROVAL OF CLASS
ACTION SETTLEMENT

# TABLE OF AUTHORITIES

**Cases:**

*Amchem v. Windsor,*
 521 U.S. 591, 623 (1991) ..................................................................................... 19

*Chu v. Wells Fargo Investments, Inc.,*
 2011 WL 672645 at * 1 (N.D. Cal. February 16, 2011 ................................. 16

*Churchill Vill., LLC v. Gen Electric,*
 361 F.3d 566, 575 (9th Cir. 2004) ................................................................... 19

*Eisen v. Carlisle & Jacqueline,*
 417 US 156 (1974) ................................................................................................. 19

*Fleming v. Covidien, Inc.,*
 2011 WL 7563047 ................................................................................................... 10

*Gribble v. Cool Transports,*
 2008 WL 5281665 *9 (C.D. Cal. December 15, 2008) .............................. 14

*Hanlon v. Chrysler Corp.,*
 150 F.3d 1011, 1020, 1022 (9th Cir. 1998) ....................................... 17, 18, 19

*Ikonen v. Hartz Moutain Corp.,*
 122 F.R.D 258, 262 (S.D. Cal. 1988) ............................................................ 17

*In re Bluetooth Headset Prods. Liab. Litig.,*
 654 F.3d 935, 942 ................................................................................................ 17

*In re First Capital Holdings Corp.,*
 1992 WL 22631 at *2 (C.D. Cal. June 10, 1992) ...................................... 15

*In re Pacific Enterprises Sec. Litig.,*
 47 F.3d 373, 378 (9th Cir. 1995) ................................................................... 14

*In re Portal Software, Inc.,*
 2007 WL 4171201 at * 3 (N.D. Cal. November 26, 2017) ...................... 11

*Kao v. Joy Holiday,*
 (2017) Cal.App.5th 947 ....................................................................................... 8

*Kirby v. Immoos Fire Protection,*
 (2012) 53 Cal.App4th 1244 .................................................................................. 8

*Lazarin v. Pro Unlimited, Inc.,*
 2013 WL 3541217 (N.D Cal. July 11, 2013) .............................................. 16

BUCHSBAUM & HAAG, LLLP
100 OCEANGATE, SUITE 1200
LONG BEACH, CALIFORNIA 90802

MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT

*Leyva v. Medline Indus. Inc.,*
    716 F3d 510, 515 (9th Cir. 2013)................................................................18

*Ling v. P.F. Chang's China Bistro,*
    245 Cal.App.4th 1242, 1261 (2016) ........................................................ 8

*Maldonado v. Epislon Plastics, Inc.,*
    (2018) Cal.App.5th 1308 .......................................................................... 9

*National Rural Tele. Coop. v. DIRECTTV, Inc.,*
    221 F.R.D 523, 526 (C.D. Cal. 2004)......................................................11

*Price v Starbucks Corp.,*
    (2016) 192 Cal.App. 4th 1136, 1147 (2011) ..........................................10

*Rodriguez v. West Publishing Corp.,*
    563 F.3d 948, 963 (9th Cir. 2003)............................................................11

*Thurman v. Bayshore Transit Management, Inc.,*
    203 Cal.App. 4th 1112, 1135 (2012) ......................................................10

**Statutes:**

Cal. Code Regs. § 13520 ............................................................................ 8

Cal. Labor Code §203................................................................................ 8

Cal. Labor Code §2699 ............................................................................10

Fed. Rule of Civil Proc. 23 ......................................................................10

**Secondary Authorities:**

Manual for Complex Litigation (3d ed. 1995) at § 30.41 .........................14

Newberg et al., Newberg on Class Actions (4th ed. 2013) at § 11:24-25 ...........14

BUCHSBAUM & HAAG, LLP
100 OCEANGATE, SUITE 1200
LONG BEACH, CALIFORNIA 90802

MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF FINAL APPROVAL OF CLASS
ACTION SETTLEMENT

1

2                    **MEMORANDUM OF POINTS AND AUTHORITIES**

3    **I.    INTRODUCTION**

4            Plaintiff seeks final approval of a $310,000 class action settlement that

5    provides significant monetary relief for 328 Class Members.  The key terms of the

6    Joint Stipulation of Class and Representative Action Settlement[1] are as follows:

7            (1)    Settlement Class Members:  all current and/or former non-exempt

8                   employees that worked for Trepco in hourly positions between

9                   November 13, 2015 , and through the date of preliminary approval

10                  (July 28, 2020) (the "Class Period"), excluding any person who opts-

11                  out.

12

13           (2)    A Gross Fund Value of $310,000 that includes:

14                  (a)    The Net Fund Value (i.e., the Gross Fund Value minus

15                         Attorneys' Fees and Costs, payroll (employee only) taxes, the

16                         Claims Administration Fee, the LWDA Payment, and the Class

17                         Representative Service Awards).

18                  (b)    $77,500 in Attorneys' Fees (25% of the gross settlement) and

19                         $9,545 in actual costs to Class Counsel.

20                  (c)    $7,000 Claims Administration Fee to Claims Administrator,

21                         Simpluris.

22                  (d)    $10,000 PAGA payment pursuant to Private Attorneys General

23                         Act (75% of which, or $7,500, goes to the LWDA, and the

24                         remaining 25%, or $2,500, going to the Net Fund).

25                  (e)    $5,000 Service Award to the class representative.

26   _____

27   [1]     Hereinafter, "Settlement Agreement" or "Settlement."  Unless indicated
     otherwise, capitalized terms used herein have the same meaning as those defined by the
28   Settlement Agreement.

BUCHSBAUM & HAAG, LLP
100 OCEANGATE, SUITE 1200
LONG BEACH, CALIFORNIA 90802

1

2      As of today's date, there are zero objections to the settlement and only one

3  "opt out."  Moreover,  through skip tracing efforts, the claims administrator was

4  able to deliver the notices to all the putative class members.  See Butler

5  Declaration, at ¶9-11.

6      The Settlement is fair, reasonable, and adequate—and meets approval under

7  Federal law.  Accordingly Plaintiff respectfully requests that this Court grant final

8  approval of the Settlement Agreement.

9  **II.  FACTS AND PROCEDURE**

10     **A.  Plaintiff Filed a Putative Class Action Alleging Labor Code**

11          **Violations**

12     On November 13, 2018, Plaintiff filed a class action complaint in the San

13 Bernardino County Superior Court for the following causes of action:  (1) failure

14 to pay all wages, including minimum wages; (2) failure to  pay overtime,

15 including overtime at the proper regular rate; (3) failure to provide require rest

16 break premiums; (4) failure to pay required meal period premiums; (5) failure to

17 pay wages due at termination;  and (6) failure to provide accurate wage

18 statements.  Plaintiff sought to recover back wages, premiums, and civil penalties

19 for Class Members.[2]  (Buchsbaum Decl. ¶9).

20     On January 23, 2019, the Defendant removed the case to Federal Court,

21 asserting a general denial and affirmative defenses.  On February 28, 2019, the

22 court granted the parties' joint stipulation to submit the case to mediation.  On

23 January 31, 2020, plaintiff filed a First Amended Complaint that related to

24 additional civil penalties and additional allegations regarding regular rate

25 underpayments for overtime.  (Buchsbaum Decl., ¶10).

26

27     [2]     The complaint also includes causes of action for unfair competition (B&P Code §

28 17200), and enforcement of PAGA (Cal. Lab. Code § 2698 et seq.).

BUCHSBAUM & HAAG, LLP
100 OCEANGATE, SUITE 1200
LONG BEACH, CALIFORNIA 90802

MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF  FINAL APPROVAL  OF CLASS ACTION SETTLEMENT

1   This proposed settlement came to fruition only after substantial legal

2   research and analysis, extensive investigation, the exchange and analysis of a

3   significant amount of relevant data, and extensive arm's-length settlement

4   negotiations at a private mediation with Steve Serratore, an experienced and well-

5   regarded wage and hour class action mediator. (Buchsbaum Decl., ¶11).

6   As stated, if the Settlement is approved, Defendants will pay a Common

7   Fund settlement of $310,000. After deductions for court-approved incentive

8   payments to the named Plaintiffs, settlement administration costs, attorneys' fees

9   and costs, and payment to the Labor & Workforce Development Agency

10  ("LWDA") for civil penalties under the Labor Code Private Attorneys General

11  Act ("PAGA"), the Net Common Fund shall be distributed to all Settlement Class

12  members, based on their number of workweeks during the relevant time periods.

13  (Buchsbaum Decl., ¶12).

14  This settlement provides a substantial recovery on Defendant's alleged

15  wage and hour violations and disputed derivative penalty claims. Based on the

16  litigation risks involved, Plaintiffs submit that the proposed settlement is well

17  within the range of reasonableness required for approval. Moreover, the settlement

18  agreement and notice distribution plan are the products of an informed and

19  thoroughly-vetted analysis of the claims and defenses, as well as the likelihood of

20  obtaining class certification, and arm's-length settlement negotiations by

21  experienced employment counsel. (Buchsbaum Decl., ¶13).

22  **III.    LEGAL CLAIMS**

23  **A.    Unpaid Overtime / Regular Rate Miscalculation**

24  Plaintiffs posited several theories of Class liability against Defendant in

25  support of his alleged claims.  One of the primary claims was that the Defendant

26  miscalculated the regular rate for overtime purpose.   Specifically, the Defendant

27  paid non-exempt employees a production bonus for returning containers to the

28

BUCHSBAUM & HAAG, LLP
100 OCEANGATE, SUITE 1200
LONG BEACH, CALIFORNIA 90802

MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT

BUCHSBAUM & HAAG, LLP
100 OCEANGATE, SUITE 1200
LONG BEACH, CALIFORNIA 90802

1    yard.  We contended that these were non-discretionary bonuses, but they were not

2    calculated as part of the regular rate. (Buchsbaum Decl., ¶14).

3        This methodological error led, in plaintiffs' counsel's view, to relatively

4    modest underpayments of overtime, which potentially triggered waiting time

5    penalties under Labor Code §203 with regard to former employees.   The

6    Defendant characterized the payments as discretionary, so this created some

7    uncertainty over the issue of waiting time penalties, which are subject to a good

8    faith dispute defense.  *See* Cal. Code Regs. § 13520 (good-faith dispute exists to a

9    claim for waiting time penalties "when an employer presents a defense, based in

10    law or fact which, if successful, would preclude any recovery on the part of the

11    employee. The fact that a defense is ultimately unsuccessful will not preclude a

12    finding that a good faith dispute did exist."); *see also **Kao v. Joy Holiday*** (2017)

13    Cal.App.5[th] 947 (precluding waiting time penalties where good-faith dispute

14    existed over entitlement to wages, and holding that "[w]aiting time penalties are

15    properly limited to the *uncontested* wages due at the time of Kao's termination")

16    (emphasis added). Defendants further contend that Plaintiffs' meal and rest period

17    claims cannot support a claim for waiting time penalties under Labor Code

18    Section 203 after the California Supreme Court's decision in ***Kirby v. Immoos***

19    ***Fire Protection*** (2012) 53 Cal.App4th 1244, which held that meal and rest period

20    claims are not actions for the "nonpayment of wages." Indeed, the California

21    Court of Appeal held last year that "[f]ollowing *Kirby*, section 226.7 cannot

22    support a section 203 penalty because [§203b] tethers the waiting time penalty to a

23    separate action for wages." ***Ling v. P.F. Chang's China Bistro*** 245 Cal.App.4[th]

24    1242, 1261 (2016).

25        The average waiting time penalty, based on average hourly earnings of class

26    members of $14.23 per hour, was approximately $3,415.  We believe there were

27    approximately 50 former employees who worked for this bonus and worked

28

overtime, leading to potential exposure of $170,760. (Buchsbaum Decl., ¶16).

## B.   Meal and Rest Period Premiums

The second primary claim was whether the drivers were relieved of all duty for the purposes of rest and meal periods.  Driver time records that we reviewed showed frequent instances of work periods exceeding 10 hours with no indication of any meal period.   The Defendant contended that it was up to the driver to document meal periods and that employees had acknowledged this rule by signing acknowledgements.  The Defendant further contended that if drivers skipped meal periods or rest periods it was simply a matter of waiver, and not because there was no opportunity to take a rest or meal period. (Buchsbaum Decl., ¶17).

Plaintiff contended that the scheduling placed intense coercive pressure to skip breaks because the delivery timelines were very tight.  However, there was some concern that this testimony would end up being anecdotal and that it may be difficult to certify the class, since there were policies in effect that provided for meal and rest periods at appropriate intervals.  (Buchsbaum Decl., ¶18).

There were 107,321 work shifts in the class period, and with an approximate 20% violation rate for either rest or meal, the exposure was approximately $305,435.   (Buchsbaum Decl., ¶19).

## C.   Paystub Claims

The paystub claim was premised on the Defendant including the wrong overtime rate in the paystub by failing to consider the true regular rate of the earnings.  Moreover, the paystubs failed to accurately indicate meal and rest period premiums that were due.   However, around the filing of this case, the Court of Appeals published ***Maldonado v. Epislon Plastics, Inc***. (2018) Cal.App.5[th] 1308, which essentially eliminates the possibility of purely derivative paystub claims, absent some contrary ruling by the California Supreme Court.  (Buchsbaum Decl., ¶20).

BUCHSBAUM & HAAG, LLP
100 OCEANGATE, SUITE 1200
LONG BEACH, CALIFORNIA 90802

MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT

BUCHSBAUM & HAAG, LLP
100 OCEANGATE, SUITE 1200
LONG BEACH, CALIFORNIA 90802

1

### D.   PAGA CLAIMS

2       The PAGA claims were derivative of the claims described above, which in

3  our view made it likely that the court would likely substantially reduce the amount

4  of any civil penalty that was already the subject of a statutory violation.   There

5  was also the question of whether a court would permit "stacking" of civil penalties

6  that derive from the same underlying wrong, making calculation of a true PAGA

7  exposure very difficult.  (Buchsbaum Decl., ¶21).

8       Defendants also deny liability under PAGA because they contend Plaintiffs'

9  underlying claims are meritless. *See, e.g., **Price v Starbucks Corp**. (2016) 192

10  Cal.App. 4th 1136, 1147 (2011) ("Because the underlying causes of action fail, the

11  derivative UCL and PAGA claims also fail."). Defendants further contend that

12  even if liability were established, this Court would utilize its discretion to severely

13  reduce any PAGA penalties awarded. *See* Labor Code §2699(e)(2) (granting

14  courts discretion to award "a lesser amount" than the full penalty "based on the

15  facts and circumstances of the particular case"); *see also **Thurman v. Bayshore***

16  ***Transit Management, Inc**. 203 Cal.App. 4th 1112, 1135 (2012).  (affirming

17  reduction of PAGA penalties); **Fleming v. Covidien, Inc**. 2011 WL

18  7563047 (reducing PAGA penalties from $2.8 million to $500,000).

19       There were 10,732 pay periods in the PAGA period, and with a 20%

20  approximate violation rate revealed by the records, exposure was $214,640, but

21  this was subject to significant reduction given the statutory fees already at play for

22  the same violations. (Buchsbaum Decl., ¶22).

23  ### IV.   THE SETTLEMENT MERITS PRELIMINARY APPROVAL

24  ### A.   The Settlement is Fair, Adequate and Reasonable

25       To receive judicial approval, a proposed **class action** settlement must be

26  "fair, reasonable, and adequate." *See* Fed. Rule of Civil Proc. 23(e)(2). In making

27  this determination, this Court may consider the following factors: (1) the strength

28

MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF  FINAL APPROVAL  OF CLASS ACTION SETTLEMENT

of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of
further litigation; (3) the risk of maintaining class action status throughout trial;
(4) the amount offered in settlement; (5) the extent of discovery completed and the
stage of the proceedings; (6) the experience and views of counsel; (7) the presence
of a governmental participant; and (8) the reaction of the class members to the
proposed settlement (which is to be evaluated at the final approval hearing, after
the class members have received notice). *See Rodriguez v. West Publishing
Corp.,* 563 F.3d 948, 963 (9th Cir. 2003)  Plaintiffs address each relevant factor
below.

### 1.    The Strength of the Case

Although he steadfastly maintains that his claims are meritorious, Plaintiff
acknowledges that Defendants possessed several defenses to both liability and
class certification, such that prevailing on either was uncertain.  (See Buchsbaum
Decl., ¶23).  As explained earlier in this brief, Defendant presented multiple
defenses to each of Plaintiffs' underlying claims, both on the merits and with
respect to class certification. As a result, Plaintiff's ability to certify and prevail on
his claims was far from guaranteed. "In most situations, unless the settlement is
clearly inadequate, its acceptance and approval are preferable to lengthy and
expensive litigation with uncertain results." *National Rural Tele. Coop. v.
DIRECTTV, Inc.* 221 F.R.D 523, 526 (C.D. Cal. 2004) (internal quotations
omitted). Thus, this factor supports preliminary approval.

### 2.    Risk, Expense, and Complexity of Further Litigation

The parties engaged in a significant amount of investigation, informal
discovery, and class-wide data analysis, and also reviewed a substantial number of
payroll records, multiple versions of employee handbooks. (*See* Buchsbaum
Decl., ¶24).  Defendant may have filed a Motion for Summary Judgment based on
several of the issues. As a result, the parties would incur considerably more

BUCHSBAUM & HAAG, LLP
100 OCEANGATE, SUITE 1200
LONG BEACH, CALIFORNIA 90802

MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF FINAL APPROVAL OF CLASS
ACTION SETTLEMENT

attorneys' fees and costs through trial. This settlement avoids those risks and the
accompanying expense.  See ***In re Portal Software, Inc.*** 2007 WL 4171201 at * 3
(N.D. Cal. November 26, 2017) (noting that the "inherent risks of proceeding to
summary judgment, trial and appeal also support the settlement"). Thus, this factor
favors preliminary approval.

### 3.     Risk of Maintaining Class Action Status

Plaintiffs had not yet filed their motion for class certification when the
parties reached the proposed settlement. (Buchsbaum Decl., ¶25). Absent
settlement, there was a risk that there would not be a certified class at the time of
trial, and that the putative class members would not recover anything. *Id*. As
discussed herein, Plaintiffs believe there was substantial risk with certifying all of
the proposed classes. Thus, this factor also supports preliminary approval.

### 4. Settlement Amount Provides Realistic Value for Claims

This proposed settlement provides a substantial monetary recovery for
Settlement Class members in face of disputed claims. As detailed, Plaintiffs
believe this settlement represents a good recovery in light of the substantial risks
that the key claims were barred by federal preemption.

#### A. Waiting Time Penalties

There were approximately 50 former drivers that we believe were
underpaid in at least one pay period as a result of the regular rate
misclassification, which given a 14.23 average hourly wage, amounts to a
waiting time penalty of $170,760.  However, as indicated, this was likely an "all
or nothing" penalty, since it was subject to a good faith defense.

#### B. **Meal and Rest Periods**

Based on the number of workweeks we extrapolated from the records, and
given a 20% violation rate, the rest and meal period premium liability amounted
to approximately $305,405.  However, we viewed the likely exposure of being

BUCHSBAUM & HAAG, LLP
100 OCEANGATE, SUITE 1200
LONG BEACH, CALIFORNIA 90802

much lower based on the defenses asserted and the complications of getting a class certified based on anecdotal testimony and no systematic defect in the meal period policy. We understood that some drivers would indicate that they did get meal and rest periods routinely, which created significant certification risks as well.

### C. **Overtime Underpayment**

The amount of the overtime underpayment based on the regular rate miscalculation was very modest, amounting to a few dollars for each pay period. Based on the size of the class, and our approximation of the number of shifts that non-discretionary bonus and overtime coincided, we believe the exposure was no more than $20,000.

### D. **Paystub Violations**

Based on *Maldonado, supra*, the paystub claim was very weak, and the exposure was in all likelihood not going to be present at trial.

### E. **PAGA Claims**

We believe there were approximately 10,732 pay periods within the PAGA period, and at $100 per pay period based on these derivative claims, the exposure (based on 20% violation rate) might have amounted to $214,640. We viewed the PAGA claims as largely duplicative of the other claims, and, as discussed above, highly vulnerable to a reduction.

In total then, we viewed the gross exposure at approximately $715,000. The settlement of $300,000, based on the merits risks associated with each of these claims, as well as the certification risks, is well within the reasonable range of settlement.

### 5. **Discovery Completed and the Status of Proceedings**

The parties engaged in a significant amount of investigation, informal class-wide discovery, and analysis prior to reaching the proposed

BUCHSBAUM & HAAG, LLP
100 OCEANGATE, SUITE 1200
LONG BEACH, CALIFORNIA 90802

MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT

settlement. (*See* Buchsbaum Decl., ¶32). As stated, Defendants provided time and pay records, and provided detailed data regarding total Settlement Class members, pay period information, average hourly rates, and other relevant data for the class. *Id.*.  It was only after this exchange of data and information that the parties participated in a full-day mediation and ultimately reached the proposed settlement by way of a mediated settlement. *Id.* Thus, this factor supports preliminary approval.

### 6.    The Experience and Views of Counsel

"Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." ***In re Pacific Enterprises Sec. Litig.***, 47 F.3d 373, 378 (9th Cir. 1995). Here, Plaintiffs are represented by experienced wage and hour class action counsel who collectively have more than two decades of wage and hour class action experience, and who have successfully served as lead counsel in certifying and settling numerous class actions both in the federal and state courts of California. (*See* Buchsbaum Decl., ¶¶ 3-7); This factor supports preliminary approval. *See, e.g.,* ***Gribble v. Cool Transports*** 2008 WL 5281665 *9 (C.D. Cal. December 15, 2008 ("Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation.")

### B.    The Final Approval Standard Is Met

The Court can grant final approval of the settlement and direct that notice be given if the proposed settlement: (1) falls within the range of possible approval; (2) appears to be the product of serious, informed, and non-collusive negotiations; and (3) has no obvious deficiencies. *See **Manual for Complex Litigation*** (3d ed. 1995) at § 30.41; Newberg et al., *Newberg on **Class Actions*** (4th ed. 2013) at § 11:24-25. These criteria are met here.

### 1. The Settlement is Within the Range of Possible Approval

BUCHSBAUM & HAAG, LLP
100 OCEANGATE, SUITE 1200
LONG BEACH, CALIFORNIA 90802

MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT

1   The proposed settlement reflects a substantial recovery in light of real

2   litigation risks on both merits and certification. Plaintiffs submit that the proposed

3   settlement is within the range of possible approval, such that notice should be

4   provided to the Settlement Class so that they can consider the settlement. The

5   Court will have the opportunity to again assess the reasonableness of the

6   settlement after the Settlement Classes have had the opportunity to opt-out or

7   object.

### 2. The Settlement Resulted from Arm's-Length Negotiations

8

9   This proposed settlement is the result of extensive arm's-length negotiations

10  by counsel and is, therefore, entitled to an initial presumption of fairness. *See **In***

11  ***re First Capital Holdings Corp***. 1992 WL 22631 at *2 (C.D. Cal. June 10,

12  1992) ("Approval of the settlement is discretionary with the court, but there is

13  typically an initial presumption of fairness where the settlement was negotiated at

14  arm's length.").

15  As discussed above, Plaintiffs thoroughly vetted the claims at issue and

16  conducted factual investigation and extensive legal research and

17  analysis. *See* Buchsbaum Decl., ¶35. The parties reached this settlement only after

18  mediating with Steve Serratore, a well-respected mediator with extensive

19  experience in mediating wage and hour class actions. *Id*. The parties each supplied

20  Mr. Serratore with detailed mediation briefs outlining their views of the strengths

21  and weaknesses of each claim and defense. *Id*. As noted, the parties mutually

22  accepted Mr. Serratore's mediated proposal, which reflected what the mediator

23  determined to be the fair settlement value of the case. *Id*. Even after the parties

24  had come to an initial agreement, both sides continued to negotiate the finer points

25  of the proposed settlement for several months while drafting the long-form

26  settlement agreement. *Id*.

### 3. The Settlement is Devoid of Obvious Deficiencies

27

28

BUCHSBAUM & HAAG, LLP
100 OCEANGATE, SUITE 1200
LONG BEACH, CALIFORNIA 90802

MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF FINAL APPROVAL OF CLASS
ACTION SETTLEMENT

BUCHSBAUM & HAAG, LLP
100 OCEANGATE, SUITE 1200
LONG BEACH, CALIFORNIA 90802

If the Court approves this settlement, Defendants will pay a Common Fund of $310,000. Moreover, no Settlement Class member will be required to submit a claim form to receive his or her Settlement payment. The principal terms of the proposed settlement agreement are summarized below:

| | |
|---|---|
| Common Fund: | $310,000 |
| Minus Court-approved attorney's fees: | $77,500 |
| Minus Court-approved costs: | $9,545 |
| Minus Court-approved incentive payments: | $5,000 |
| Minus PAGA payment to LWDA: | $7,500 |
| Minus settlement administration costs: | $7,000 |
| Net Common Fund: | **$203,455** |

The payments will be made to class members based on their proportionate number of workweeks during the class period.  *See* Settlement, ¶53

The average payment to Settlement Class members under this proposed settlement is $618.90 and the highest payment would be $2,532.96.   See Butler Decl., ¶12. Moreover, this average recovery per class member is on par with, and exceeds, other wage and hour class action settlements involving non-exempt employees alleging similar claims.

Settlement Class members who do not opt-out of the Settlement will be bound by the Settlement's terms, and will release the Releasees from all California claims that are alleged in, or that reasonably could have arisen based on the facts alleged in the Complaint. *See* Settlement, ¶31. The parties have agreed to designate a total $10,000 of the Common Fund for PAGA penalties, seventy-five percent (75%) of which will go to the LWDA, which is appropriate. *See, e.g., **Chu v. Wells Fargo Investments, Inc**. 2011 WL 672645 at * 1 (N.D. Cal. February 16, 2011 (approving PAGA payment of $7,500 to LWDA out of $6.9 million common-fund settlement); **Lazarin v. Pro Unlimited, Inc**. 2013 WL 3541217

(N.D Cal. July 11, 2013) (approving PAGA payment of $7,500 to LWDA out of $1.25 million common-fund settlement).

### 4.    The Attorney Fee Request and Incentive are Reasonable.

The proposed incentive payment to Plaintiff of $5,000 is also reasonable. See Beirne Declaration and Buchsbaum Decl.., at ¶¶52-59.

Federal Rule of Civil Procedure 23(h) provides that, [i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement.  "Attorney's fees provisions included in a proposed class action agreement are, like every other aspect of such agreement, subject to a determination whether the settlement is "fundamentally fair, adequate and reasonable." *Staton v. Boeng Co*. 327 F.3d 938, 964 (9th Cir. 2003).

In "common fund" cases, a "litigant or a lawyer who recovers a common for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole.  *Id*.,, at 967 (*quoting *Boeing Co. v. Van Gemert* 444 US 472, 478 (1980).  To determine the amount of the attorney's fees to be drawn from the fund, the district court may utilize the "percentage method," which awards the attorneys a percentage of the fund.  *Id.*  The 9th Circuit's "benchmark" for attorney's fees in common fund class action is 25% of the common fund.   Selection of the benchmark, however, must be supported by findings that take into account all of the circumstances of the case.  See *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048 (9th Cir. 2002). Circumstances include (1) the results achieved; (2) the risks of litigation; (3) whether there are benefits to the class beyond the immediate generation of a cash fund; (4) whether the percentage rate is at or above the market rate; (5) the contingent nature of  the representation and the opportunity cost of bringing the suit; (6) a loadstar cross-check; and (7) reactions from the class. Id., at 1048-1052.

BUCHSBAUM & HAAG, LLP
100 OCEANGATE, SUITE 1200
LONG BEACH, CALIFORNIA 90802

Here, Plaintiff's counsel took this case on a contingency, with all the associated risk that it entails, and an obligation to advance, at his own risk, the costs for the case.  Plaintiff's Counsel's request for attorney's fees not to exceed $77,500 (25% of gross settlement) for all past and future attorney's fees necessary to prosecute, settle, and administer the litigation and this proposed Settlement, and for verified litigation costs not to exceed $9,545. *See **In re Bluetooth Headset Prods. Liab. Litig.*** 654 F.3d 935, 942.  (in the Ninth Circuit, a 25% award is the "benchmark" attorneys' fee award).  The 25% is also supported by plaintiff's counsel's loadstar, without any multiplier for contingent risk.  See Buchsbaum Decl. ¶45-49.  The 25% is at or below the going rate in Los Angeles County for contingency wage and hour cases, and the results to the class, which include over $600 for each class member, and no objections to the settlement, warrant the 25% benchmark fee as well.  Plaintiff's counsel is also seeking reimbursement for verified and necessary costs amounting to $9,545, which include the mediation fee ($7,500), the complex filing and serve costs ($1.590) and $455 in additional filing and copying costs.  See Buchsbaum Declaration at ¶45-49.   Because the proposed settlement is devoid of obvious deficiencies, this final factor also supports preliminary approval.

## V.    THE SETTLEMENT MERITS CERTIFICATION

### A.    Rule 23(a)(1) Numerosity Is Satisfied

Numerosity is satisfied because there are 328 current and former non-exempt employees in the proposed Settlement Class. See Settlement at ¶ 16; *see also **Ikonen v. Hartz Moutain Corp***. 122 F.R.D 258, 262 (S.D. Cal. 1988) (holding that classes of 40 or more members satisfy numerosity).

### B.    Rule 23(a)(2) Commonality Is Satisfied

The Settlement Class satisfies commonality because there are common questions of fact and law arising from Plaintiffs' and the proposed Settlement

Class' employment with Defendants, such as Defendant's allegedly improper regular rate miscalculations, meal and rest period policies and defects with maintaining accurate paystubs -- all of which Plaintiffs contends arise from a common core of facts, as discussed above.  See Beirne Declaration.

## C.  Rule 23(a)(3) Typicality Is Satisfied

According to the Ninth Circuit, "[u]nder [Rule 23(a)(3)'s] permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members." *See **Hanlon v. Chrysler Corp.*** 150 F.3d 1011, 1020 (9th Cir. 1998) . Here, Plaintiff's claims are typical of those held by other non-exempt employees. Plaintiffs were employed by Defendants as hourly non-exempt employees during the relevant time periods.  Plaintiffs were subject to Defendants' challenged regular rate miscalculations, meal and rest period policies, as well as paystub irregularities. *Id*. Because the Settlement Class consists only of other non-exempt employees, and because Plaintiffs' claims stem from Defendants' wage and hour policies and practices, typicality is satisfied.

## D.  Rule 23(a)(4) Adequacy Is Satisfied

Plaintiff is also adequate as a class representative under Rule 23(a)(4). To satisfy this requirement, Plaintiffs and their counsel must not have conflicts of interest with the proposed classes, and must vigorously prosecute the action on behalf of the classes. ***Hanlon, supra***, 150 F.3d  at 1020. Here, there is no conflict of interest between Plaintiff and the proposed Settlement Class. As a non-exempt employees, Plaintiff pressed forward claims for unpaid wages, unpaid premium wage, and related penalties resulting from Defendants' allegedly unlawful wage and hour policies and practices on behalf of other non-exempt employees. As detailed above, the proposed settlement reflects a substantial recovery of Settlement Class members' alleged damages. Given the relatively small amounts at issue per employee, Plaintiff asserts that it is unlikely that any class member,

BUCHSBAUM & HAAG, LLP
100 OCEANGATE, SUITE 1200
LONG BEACH, CALIFORNIA 90802

MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF  FINAL APPROVAL  OF CLASS
ACTION SETTLEMENT

especially a current employee, would have pursued these claims against Defendant individually. *See, e.g.,* ***Leyva v. Medline Indus. Inc***. 716 F3d 510, 515 (9th Cir. 2013) ("In light of the small size of the putative class members' potential individual monetary recovery, class certification may be the only feasible means for them to adjudicate their claims. Thus, class certification is also the superior method of adjudication."). Finally, Plaintiff's counsel diligently litigated this case, undertook an extensive analysis of the claims and potential damages, and there are no conflicts with the Settlement Class members. As set forth in the concurrently filed declarations of Plaintiffs' counsel, Plaintiffs' counsel are adequate to represent the proposed Settlement Class given their qualifications, skills, and experience.

### E.   Rule 23(b)(3) Predominance Is Satisfied

Predominance tests "whether the proposed classes are sufficiently cohesive to warrant adjudication by [class action] representation." *See* ***Amchem v. Windsor***, 521 U.S. 591, 623 (1991). Because Plaintiffs seek certification for settlement purposes, trial manageability need not be considered. Id., at 620. As all Settlement Class members were allegedly deprived of wages due to Defendants' allegedly unlawful regular rate miscalculation, and meal and rest period policies and practices, the Settlement Class is "sufficiently cohesive" since a "common nucleus of facts" and "potential legal remedies" dominate. *See* ***Hanlon, supra***, 150 F.3d at 1022.  See Buchsbaum Decl.,

## VI.   THE PROPOSED NOTICE PROCESS SATISFIES DUE PROCESS

Due process requires that notice be provided by the best reasonable method available. *See* ***Eisen v. Carlisle & Jacqueline*** 417 US 156 (1974*)*. Notice is satisfactory if it "generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be

BUCHSBAUM & HAAG, LLLP
100 OCEANGATE, SUITE 1200
LONG BEACH, CALIFORNIA 90802

MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF  FINAL APPROVAL  OF CLASS ACTION SETTLEMENT

heard." *See* **Churchill Vill., LLC v. Gen Electric**, 361 F.3d 566, 575 (9th Cir. 2004).

Simpluris was appointed by the Court as Settlement Administrator to administer the Settlement in accordance with the terms of the Joint Stipulation and Class Action Settlement Agreement (the "Settlement"). Simpluris has been responsible, among other things, for: (a) printing and mailing the Notice of Proposed Class Action Settlement and Hearing Date for Court Approval, Share Form and Challenge Form ("Notice Packet"); (b) receiving undeliverable Notice Packets; (c) receiving and requests for exclusion; (d) and answering questions from Class Members. If the Court grants final approval of the Settlement, Simpluris will be responsible, among other things, for: (e) calculating individual Settlement payments, distributing funds, and tax-reporting following final approval; (f) mailing Settlement checks; (g) and for such other tasks as the Parties mutually agree or the Court orders Simpluris to perform. Butler Decl., ¶3.

## TOLL FREE TELEPHONE HELPLINE

A toll-free telephone number was included in the Class Notice for the purpose of allowing the Class Members to call Simpluris and to make inquiries regarding the Settlement. The system is accessible 24 hours a day, 7 days a week, and will remain in operation throughout the settlement process. Callers have the option to speak with a live call center representative during normal business hours or to leave a message and receive a return call during non-business hours. The toll-free telephone number included in the Class Notice was 1-888-369-3780. See Butler Decl., at ¶4

## NOTIFICATION TO THE CLASS

On July 29, 2020, Simpluris received the Court-approved Notice Packet from Plaintiffs' Counsel. The Notice Packet advised Class Members of their right to opt out from the Settlement, object to the Settlement, or do nothing, and the implications of each such action. The Notice Packet advised Class Members

BUCHSBAUM & HAAG, LLP
100 OCEANGATE, SUITE 1200
LONG BEACH, CALIFORNIA 90802

of applicable deadlines and other events, including the Final Approval Hearing, and how Class Members could obtain additional information. Butler Decl., ¶5.

On August 18, 2020, Counsel for Defendant provided Simpluris with a mailing list containing the name, last known address, Social Security Number, and number of weeks worked during the Class Period for the Class Members. The Class List contained data for 329 unique Class Members. Butler Decl., at ¶6.

The mailing addresses contained in the Class List were processed and updated utilizing the National Change of Address Database ("NCOA") maintained by the U.S. Postal Service.  The NCOA contains changes of address filed with the U.S. Postal Service.  In the event that any individual had filed a U.S. Postal Service change of address request, the address listed with the NCOA was utilized in connection with the mailing of the Notice Packets. Butler Decl., ¶7.

On September 8, 2020, after updating the mailing addresses through the NCOA, Notice Packets were mailed via First Class Mail to 329 Class Members contained in the Class List. Butler Decl., ¶8.

As of the date of this declaration, 34 Notice Packets were returned by the post office. For those without a forwarding address, Simpluris performed an advanced address search (i.e. skip trace) on all of these addresses by using Accurint, a reputable research tool owned by Lexis-Nexis.  Simpluris used the Class Member's name, previous address and Social Security number to locate a more current address.  Thirty-four (34) Notice Packets were re-mailed to either a newfound address, with forwarding addresses provided by the United States Postal Service or at the request of the Class Member. Ultimately 0 Notice Packets were undeliverable. Butler Decl., ¶9.

## EXCLUSIONS AND OBJECTIONS

As of the date of this declaration, Simpluris received 1 requests for

BUCHSBAUM & HAAG, LLP
100 OCEANGATE, SUITE 1200
LONG BEACH, CALIFORNIA 90802

MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT

1    exclusion from the Settlement.  Butler Decl., ¶10.

2          As of the date of this declaration, Simpluris has not received any

3    objections. Butler Decl., at ¶11.

4          As of the date of this declaration, the *highest* Settlement Share to be paid is

5    approximately $2,532.96 and the *average* Settlement Share to be paid is

6    approximately $618.90.  These amounts are not final since timely responses can

7    be received several days after the November 7, 2020 postmark deadline.  Butler

8    Decl., ¶12

9                          **ADMINISTRATION COSTS**

10          Simpluris' total costs for services in connection with the administration of

11    this Settlement, including fees incurred and anticipated future costs for

12    completion of the administration, are $7,000.00.  Simpluris' work in connection

13    with this matter will continue with the calculation of the Settlement checks,

14    issuance and mailing of those Settlement checks, etc., and to do the necessary tax

15    reporting on such payments. Butler Decl., at ¶13.

16
**VII.    CONCLUSION**

17          For the foregoing reasons, Plaintiff respectfully request that the Court

18    grant final approval of this class, collective, and representative action settlement.

19

20

21

22    Dated: October 26, 2020        LAW OFFICES OF BUCHSBAUM & HAAG
                                      A Limited Liability Partnership
23

24

25    By: _____

26    Brent Buchsbaum, Attorney for Plaintiffs

27

28

BUCHSBAUM & HAAG, LLP
100 OCEANGATE, SUITE 1200
LONG BEACH, CALIFORNIA 90802